UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME C. DAVIS,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Case No. CV-05-2155 JC<br><br>MEMORANDUM OPINION |

### I.     PROCEEDINGS

Plaintiff Jerome C. Davis filed a Complaint on March 24, 2005, seeking review of the Commissioner's denial of benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' Joint Stipulation ("JS"), filed on January 24, 2006.

After consideration of the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The ALJ's findings regarding the

///
///
///

testimony of the medical expert in issue are supported by substantial evidence and are free from material error.[1]

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff has asserted that he became disabled beginning on February 16, 1993, due to physical and mental impairments.  (Administrative Record ("AR") 104).  An Administrative Law Judge ("ALJ") examined the medical record and heard testimony from Plaintiff and a vocational expert on February 6, 1997.  (AR 539, 777-808).  On February 21, 1997, the ALJ found, inter alia, that Plaintiff was not entitled to disability insurance benefits.  (AR 539-48).  The Appeals Council granted review, vacated the hearing decision and remanded the case for further proceedings.  (AR at 604-07).

Another ALJ examined the medical record and heard testimony from Plaintiff, a medical expert, and a vocational expert on June 3, 1999.  (AR 640, 809-60).  On September 13, 1999, the ALJ found, inter alia, that Plaintiff was not entitled to disability insurance benefits.  (AR 640-50).  The Appeals Council again granted review, vacated the hearing decision and remanded the case for further proceedings.  (AR 669-71).

The ALJ who conducted the June 3, 1999 hearing, further examined the medical record, and on August 6, 2004, heard additional testimony from Plaintiff, a medical expert – Dr. Agler, and a vocational expert.[2]  (AR at 16, 861-924).  On

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] Dr. Agler, a non-examining medical expert, who reviewed Plaintiff's medical records, opined that at the time of the August 2003 hearing, Plaintiff met a listing, had a borderline personality disorder and might have severe depression, but did not have a bipolar condition.  (AR 867, 872).

(continued...)

October 30, 2003, the ALJ found that: (1) Plaintiff suffered from the following severe impairments: obesity, left shoulder strain with subdeltoid bursitis, a right inguinal hernia, chronic asthma, a right fibulotalar ligament strain, a right knee chondromalacia, cervicothoracic strain syndrome with cervical disc narrowing,

---

$^2$(...continued)
  With respect to the time frame of 1994 to 2000, Dr. Agler offered several opinions. He stated that Plaintiff probably would not equal a listing in 1994 and did not appear to meet a listing in 1995. (AR 876, 877, 884-85). He opined that from 1994 to 1997, the combination of plaintiff's psychiatric condition and physical condition due to his orthopaedic surgeries in 1994, 1995, 1996, and 1997 did not meet nor equal a listed impairment, and that Plaintiff was able to maintain a job at that point. (AR 877-78). He noted that the surgeries were "discreet and not overwhelming." (AR 878).

  With respect to the year 1997, Dr. Agler made a series of equivocal statements. He initially stated, based on his recollection of a report of psychologist Dr. Rau, that Plaintiff "certainly could be considered to equal" a listing in 1997. (AR 877). Dr. Agler then immediately retracted that opinion after looking at the report again, stating that Plaintiff is "only moderately limited but – let me look at that again. Well, that's – I guess not." (AR 877). He then agreed to Plaintiff's counsel's characterization that Plaintiff's condition in 1997 "maybe" equaled a listing. (AR 877).

  Dr. Agler was also less than definitive about Plaintiff's condition prior to his stepfather's death in 1999 or 2000. Dr. Agler initially indicated that he did not have an opinion as to how severe Plaintiff's condition was prior to his stepfather's death, except that it was not as severe as after the death. (AR 873). He then stated that Plaintiff "would have been just below listing level." (AR 873, 876).

  With respect to the time period following Plaintiff's stepfather's death, Dr. Agler was also indefinite. At one point, he indicated that after the death, Plaintiff's mental condition became "significantly worse" and that from that time, Plaintiff met a listing with marked limitations in social functioning, concentration, persistence, and pace. (AR 867, 871-72). However, he later stated that he was "not really clear on if [Plaintiff] became markedly worse" after the death. (AR 873).

  Dr. Agler also gave somewhat equivocal opinions regarding Plaintiff's condition more than four years before the August 2003 hearing, i.e. before August 1999. At one point, he said that he "suspect[ed] that the medical conditions combined certainly make[] [Plaintiff's] psychiatric condition worse so that they would have met or equaled the listings prior to four years ago." (AR 876). Dr. Agler then immediately backtracked, saying "I'm not sure, I don't think it's more than four years ago." (AR 876).

ulnocarpal impaction treated with lunotriquetral fusion of the right wrist as well as ulnar shortening, a bipolar disorder, borderline personality disorder, and substance addiction disorder  (AR 17, 23); (2) Plaintiff's impairments or a combination of impairments did not meet or medically equal one of the listed impairments at any time prior to December 31, 1998, the date on which he was last insured (AR 17, 23-24); (3) Plaintiff did not retain the residual functional capacity to perform his past relevant work (AR 23); (4) Plaintiff retained the residual functional capacity to perform light work with a limitation to occasional pushing and pulling or overhead reaching with the left upper extremity, occasional stooping, crouching and crawling activities or grasping with the right hand, and an avoidance of concentrated exposure to pulmonary irritants with moderate limitations in his ability to interact and relate to supervisors and coworkers and a total preclusion from dealing with the general public (AR 23); and (5) based on this residual functional capacity, Plaintiff could perform a significant range of light work activities that exist in significant numbers in the national economy including: pencil inspector, machine operator, and production inspection.  (AR at 23-24).

The ALJ incorporated by reference the discussions of the medical evidence set forth in the February 21, 1997, and the September 13, 1999, ALJ decisions.  (AR at 17).  The Appeals Council denied review.  (AR 7-10).

### III.   DISCUSSION

#### A.   Applicable Legal Standards

Pursuant to 42 U.S.C. section 405(g), this Court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) (citing Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is "more than a mere scintilla but less than a

preponderance." Howard ex rel. Wolff ("Wolff") v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citing Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)).

To determine whether substantial evidence supports a finding, the Court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the Court may not substitute its judgment for that of the Commissioner. Reddick v. Chater, 157 F.3d 715, 720-21 (9th Cir. 1998) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

The claimant bears the burden of proving that he meets or equals a listed impairment. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett, 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099. For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. Sullivan, 493 U.S. at 531.

**B.     Substantial Evidence Supports the ALJ's Findings Regarding the Medical Expert and Such Findings are Not Materially Erroneous**

Plaintiff argues that the ALJ misinterpreted the testimony of a medical expert, Dr. Agler, in finding that claimant did not meet or equal listings until after

the date he was last insured.³ (JS 3). Plaintiff further contends that the ALJ erred by failing to review or discuss Dr. Agler's alleged testimony that a combination of plaintiff's impairments equaled a listing in January 1997. (JS 4). The Court finds that substantial evidence supports the ALJ's findings regarding Dr. Agler's testimony and that such findings are not materially erroneous.

First, Plaintiff quarrels with the ALJ's interpretation of certain statements made by Dr. Agler. The ALJ stated that:

> [Dr. Agler] gave the opinion that, after the death of [Plaintiff's] stepfather in 1999 or 2000, the claimant's mental condition had become severe and met a listing with marked limitation in social functioning and marked impairment in concentration, persistence and pace. [Dr. Agler] stated that, before then, the claimant's condition was just below listing level **at times**.

(AR 19) (emphasis in original).

Plaintiff contends that the ALJ erred because Dr. Agler never testified that his condition was just below the listing level "at times." (JS 3). Although Plaintiff is correct that Dr. Agler did not explicitly state that Plaintiff's medical condition was just below listing level "at times," Dr. Agler did testify that Plaintiff "would have been just below criteria" prior to the death of Plaintiff's stepfather in 1999 or 2000. (AR 873). Dr. Agler later agreed to Plaintiff's counsel's characterization that "prior to the death of [Plaintiff's] stepfather. . .he would have been just below the listings." (AR 876). Since Dr. Agler did in fact state that

---

³Although plaintiff at one point frames the issue as "whether he met the listings, or equaled them, prior to DLI (the date last insured) on December 31, 1998," he does not identify the listing(s) in issue, only addresses and takes issue with the ALJ's interpretation of Dr. Agler's testimony, and does not dispute any of the ALJ's other factual findings. (JS 3). Consequently, this Court addresses only Plaintiff's specific allegations regarding the ALJ's interpretation of the medical expert's testimony. The Court notes that even though neither party has identified the specific listing(s) in issue, it appears to the Court, based on a review of the record, that the listings in issue are listing 12.04 regarding "affective disorders," and listing 12.08, regarding "personality disorders." See 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.08.

Plaintiff's condition was "just below listing" at a specified time, the Court finds that the ALJ's finding was supported by substantial evidence, and that any error in the ALJ's use of the phrase "at times," is immaterial.

Second, Plaintiff contends that the ALJ erroneously failed to review or discuss Dr. Agler's testimony that Plaintiff's mental and physical impairments equaled a listing in January 1997. (JS 3-4). This argument lacks merits.

At a threshold level, the Court finds that the premise for Plaintiff's argument is faulty as Plaintiff's characterization of Dr. Agler's testimony is not supported by the record. As discussed in note 2, supra, Dr. Agler made a series of equivocal statements regarding Plaintiff's mental condition in 1997. He initially stated, based on his recollection of a report of psychologist Dr. Rau, that Plaintiff "certainly could be considered to equal" a listing in 1997. (AR 877). Dr. Agler then immediately retracted that opinion after looking at the report again, stating that Plaintiff is "only moderately limited but – let me look at that again. Well, that's – I guess not." (AR 877). He then agreed to Plaintiff's counsel's characterization that Plaintiff's condition in 1997 "maybe" equaled a listing. (AR 877). With respect to Plaintiff's combined mental and physical impairments in 1997, Dr. Agler opined that the combination of Plaintiff's psychiatric condition and physical condition due to his orthopaedic surgeries in 1994, 1995, 1996, and 1997 did not meet nor equal a listed impairment, and that Plaintiff was able to maintain a job at that point. (AR 877-78). Dr. Agler noted that the surgeries were "discreet and not overwhelming." (AR 878).

Despite the above-referenced testimony, Plaintiff quite definitively states that Dr. Agler testified that "the claimant 'equaled' the listing in January 1997" and that "Dr Agler agree[d]" that "[g]iven the fact that the claimant met the psychiatric listings alone by 1999 or 2000 and that before that date he was just below listings level, it is nearly expected that severe orthopedic, and other medical problems, would push claimant into 'equivalency'. However, Plaintiff provides no

7

citation to the record which supports such definitive statements. (JS 4). Nor does the Court's review of Dr. Agler's testimony yield any support in the record for such definitive statements.[4] At best, Dr. Agler testified that Plaintiff's condition in 1997 "maybe" equaled a listing. Plaintiff cites to no authority and the Court is aware of none, that equates a "maybe" response to a definitive conclusion that a claimant has satisfied his burden to demonstrate that he meets or equals a listing. Cf. Holohan v. Massanari, 246 F.3d 1195, 1206 n.8 (9th Cir. 2001) (criticizing ALJ for mischaracterizing examining physician's opinion that claimant "may" be able to perform simple tasks as opinion that claimant "could" perform simple tasks).

Moreover, although Plaintiff correctly notes that an ALJ must consider whether a claimant's combination of impairments is medically equal to any listed impairment, the Court finds that the ALJ did so here. After expressly listing Plaintiff's multiple physical and mental impairments, the ALJ found that said "impairments...[are] not severe enough to meet or medically equal one of the [listed] impairments." (AR 17). The ALJ further summarized the evidence and concluded that Plaintiff's "medically determinable impairments do not meet or medically equal one of the listed impairments." (AR 23). Contrary to Plaintiff's argument, the ALJ's discussion sufficed under these circumstances.

Although Plaintiff argues that the ALJ did not reference or discuss Dr. Agler's testimony regarding the combination of Plaintiff's mental and physical conditions, he cites no authority for the proposition that the ALJ was required to

---

[4]Although it is immaterial to whether Plaintiff met or equaled a listing prior to December 31, 1998, the Court notes that the ALJ explicitly rejected Dr. Agler's opinion that Plaintiff met a listing since 1999. (AR 21). As noted above, Dr. Agler was neither a treating nor an examining physician. The ALJ reasoned that the record contained no psychiatric treatment notes from the end of Dr. Rau's (a treating physician) treatment on August 28, 1998 to the initial assessment at Santa Clarita Valley Mental Health on February 27, 2002. (AR 21). See generally Thomas, 278 F.3d at 957 (ALJ need not accept opinion of any physician, including treating physician, if opinion is brief, conclusory, and inadequately supported by clinical findings).

do so. The Court finds that the ALJ properly considered Dr. Alger's testimony, although he did not expressly discuss all such testimony. The ALJ both noted that Dr. Agler had testified and expressly stated that he had reviewed all of the evidence in the record. (AR 16, 17). The ALJ directly referenced and expressly considered Dr. Agler's testimony in other respects. (AR 19, 20, 21). In interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence. Wolff, 341 F.3d at 1012 (citations omitted). The ALJ's failure to cite specific evidence does not necessarily indicate that it was not considered. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). In light of the foregoing, the Court finds that the ALJ properly considered Dr. Alger's testimony even though he did not discuss every detail thereof.

The Court therefore concludes that the ALJ's interpretation of Dr. Agler's testimony that Plaintiff's impairments did not meet or equal the listings until after December 31, 1998, is supported by substantial evidence and is not materially erroneous.[5]

///
///
///
///
///
///
///
///
///

---

[5] In light of the Court's affirmance of the ALJ's finding that Plaintiff was not disabled prior to December 31, 1998, a remand to allow the ALJ to assess the degree to which Plaintiff's alleged disability is attributable to drug use is unnecessary. See Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001) (no need to proceed with analysis of impact of alcoholism or drug addiction if claimant not found disabled under five-step analysis).

**IV.   CONCLUSION**

For all of the foregoing reasons, IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.[6]

DATED: September 28, 2006

/s/
_____
JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court has considered and rejected Plaintiff's alternative request to remand this action for the purpose of allowing Plaintiff to present testimony from an orthopedic expert and additional testimony from Dr. Alger regarding the combined effect of Plaintiff's orthopedic and psychiatric impairments. (JS 7). Plaintiff bears the burden of demonstrating that he meets or equals a listing and has already had multiple opportunities to present such testimony if he believed it necessary. Plaintiff has not suggested that it was incumbent upon the ALJ to solicit such testimony. Moreover, the Court finds that the ALJ was not required to so expand the record in this case because the record is not ambiguous or inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop record triggered only when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence) (citation omitted). To place such an obligation on the ALJ under the circumstances of this case would be tantamount to shifting the initial burden of proof from Plaintiff to the Commissioner. Id. at 459.